(78 South. 131)

No. 22574.

HOLSTEIN v. GUSS et al. GUSS v. POLICE JURY OF CATAHOULA PARISH et al. STATE ex rel. HOLSTEIN v. GUSS.

(Feb. 25, 1918.)

*(Syllabus by the Court.)*

1. OFFICERS ⊚⟝5 — ELECTION OR APPOINTMENT—LEGISLATIVE POWER.

Under articles 71, 72, and 171 of the Constitution, and Act No. 78 of 1906, construed together, the General Assembly is as well within its rights in declaring that an unexpired term of less than a year of a statutory office shall be filled by gubernatorial appointment, without the action of the Senate, as in declaring that an unexpired term of more than a year in such office shall be filled by election.

2. OFFICERS ⊚⟝56—VACANCY—POSSESSION—APPOINTMENT.

As two persons cannot, at the same time, fill a vacancy in the same office, it follows that the later commission is inoperative when the holder of the earlier, who remains in possession of the office, is not removed, and the indications are that the later appointment was made in error, either of fact or law.

Appeal from Eighth Judicial District Court, Parish of Catahoula; George Wear, Jr., Judge ad hoc.

Suit by Willis C. Holstein against John A. Guss, and mandamus by the State, on the relation of Willis C. Holstein, against John A. Guss, and suit for injunction by John A. Guss against the Police Jury of Catahoula Parish. Cases consolidated, and from the

single judgment rendered, Holstein, Guss, and others appeal. Affirmed.

Dale, Young & Dale, of St. Joseph, for plaintiff. R. M. Taliaferro, of Harrisonburg, and Stubbs, Theus, Grisham & Thompson, of Monroe, for defendant Guss.

## Statement of the Case.

MONROE, C. J. The parties in interest in the above-entitled cases are Willis C. Holstein and John A. Guss, each of whom asserts that he was the de facto and de jure assessor of the parish of Catahoula for the year 1916, and is entitled to the compensation that may be due for the making of the parish assessment for that year; the police jury and the school board, by which bodies the compensation is to be paid, disclaim all interest, save that they may be protected in making the payment.

In the first of the suits, Holstein obtained preliminary injunctions prohibiting Guss from interfering with him in the discharge of his functions until he (Guss) should have obtained a judgment decreeing him entitled to the office in dispute, and prohibiting the police jury and the school board from paying him the salary. In the second suit, Guss obtained a similar injunction prohibiting the police jury from paying any part of the salary to Holstein. In the third suit, to which Guss is made a party, Holstein prays that he be decreed entitled to the salary, and that the police jury and school board be ordered to pay it to him.

The cases were consolidated by consent, submitted and decided (in favor of Holstein) upon an agreed statement of facts, and Guss prosecutes the appeal. The statement is rather elaborate, and we have reduced it to the following summary, to wit:

K. P. Holstein was the assessor, and his term would have expired on December 31, 1916; he died on January 23d of that year,

leaving a vacancy in the office; the then Governor (Hall) on January 26th appointed Willis C. Holstein to fill the vacancy, and the appointee, on February 19th, qualified as required by law and took possession of the office, with its books, papers, etc., entered upon the discharge of its functions, and from that time until the installation of the newly elected assessor on January 1, 1917, retained such possession, constantly asserting his right thereto. He received from the state auditor the blank rolls upon which the assessments were to be entered, began their preparation on May 10th, and, having completed the assessment, tendered one of the rolls to the tax collector on November 13th, and another to the auditor on November 21st, but those officers, acting on the advice of the Attorney General, refused to accept them. He tendered the third roll to the clerk of the court, who also at first refused to accept it, but did accept it in December 14th. In the meanwhile the Senate had convened, held its session, and adjourned; Governor Pleasant had been inaugurated as the successor of Governor Hall, and the appointment of Holstein had not been sent to the Senate for confirmation, and was never confirmed.

In the meanwhile also in July, 1916, Governor Pleasant had appointed Guss to the same office, "vice K. P. Holstein, deceased," and Guss, having qualified by taking the oath, etc. (though the Senate not having thereafter convened, his appointment was never confirmed), demanded the rolls which had been furnished to Holstein, and upon the refusal of the latter to surrender them obtained other such rolls from the state authorities, and also proceeded to make the assessment; and the rolls prepared by him were filed with state auditor, the tax collector, and the clerk of court, respectively.

On July 23d Holstein presented abstracts of the rolls which he had prepared to the board of equalization, which board, at first,

refused to accept them, in view of the then recent appointment of Guss, but, the matter having been referred by the Governor to the Attorney General, that officer advised that the abstracts tendered by Guss could not be received, for the reason that Guss had not then qualified, and the abstracts tendered by Holstein were thereupon accepted and were acted upon.

It is agreed that neither Holstein nor Guss have brought suit under the intrusion into office act, and that J. W. Wright was elected to the office in question for a term beginning on January 1, 1917. It is also agreed that all suits now pending between Holstein and Guss concerning said office and its emoluments be consolidated and disposed of in one judgment. It is further agreed that Holstein was never removed from office, unless the subsequent appointment of Guss may have operated a removal, and that he never resigned or abandoned the office.

## Opinion.

[1] The power to make original appointments and appointments to fill vacancies in office has been conferred upon the Governor, acting with the approval of the Senate, or upon the Governor alone by the Constitutions of 1868, 1879, 1898, and 1913, in substantially the same terms. Each of those instruments declares that the Governor "shall nominate, and by and with the advice and consent of the Senate appoint all officers whose offices are established by the Constitution, and whose appointments are not herein otherwise provided for," and each of them contains the proviso "that the General Assembly shall have a right to prescribe the mode of appointment to all other offices established by law" (or "appointment or election to all offices created by it"). Const. 1868, art. 60; Const. 1879, art. 68; Const. 1898 and 1913, art. 71. The Constitution of 1868 (article 61) vested in the Governor the power to "fill vacancies that

may happen during the recess of the Senate, by granting commissions, which shall expire at the end of the next session thereof, unless otherwise provided by this Constitution," subject to the restriction that no person who had been nominated and rejected should be so appointed to the same office. In the Constitution of 1879 (article 69) there was added to article 61 of the Constitution of 1868 the provision:

"The failure of the Governor to send into the Senate the name of any person appointed for office, as herein provided, shall be equivalent to a rejection."

And article 72 in the Constitutions of 1898 and 1913 is framed in the same language. Each of the Constitutions contain articles reading:

"The General Assembly may determine the mode of filling vacancies in all offices for which provision is not made in this Constitution."

"All officers shall continue to discharge the duties of their offices until their successors shall have been inducted into office, except in cases of impeachment or suspension."

Const. 1868, arts. 120, 122; Const. 1879, arts. 160, 161; Const. 1898 and 1913, arts. 171, 172.

It will be observed that, whereas the power conferred upon the Governor to make original appointments is limited to offices created by the Constitution, and is subject to the condition that his appointments shall be made with the advice and consent of the Senate, the power to fill vacancies "that happen during the recess of the Senate," whilst not specially restricted as to the class of offices, is limited to the granting of commissions "which shall expire at the end of the next session" of the Senate, "unless otherwise provided for in this Constitution," or, as it reads in the present Constitution (article 72):

"The Governor shall have power to fill vacancies that may happen during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session; but no person who has been nominated for office and rejected shall be appointed to the same office during the recess of the Senate. The failure of the Governor to send to the Senate the

name of any person appointed for office, as herein provided, shall be equivalent to a rejection."

The only other cases which can be said to be "otherwise provided for" in the Constitution are those which are within the contemplation of articles 71 and 171, which confer upon the General Assembly the right to prescribe "the mode of appointment or election to all offices created by it," and of "filling vacancies in all offices for which provision is not made in this Constitution"; and if article 171 does not authorize a mode otherwise than as provided in art. 72 of filling vacancies in offices created by the General Assembly and which that body is authorized to fill by original appointment, it is entirely inoperative, and, together with the words, "in cases not otherwise provided for in this Constitution," as used in article 72, might as well have been omitted.

We find, however, that from the beginning, i. e., from the first statute that was enacted on the subject after the adoption of the Constitution of 1868, the General Assembly has proceeded upon the assumption that there are offices the mode of filling vacancies in which are not provided for in the Constitution. Thus act No. 27 of 1868, which became a law but a few months after the adoption of the Constitution of that year, reads in part:

"Section 1. * * * That whenever a vacancy occurs in any office, state, parish, or municipal, in this state, now existing, or which may hereafter be created, from death, resignation or from any other cause whatever the mode of filling which is not provided for in the Constitution, all such vacancies shall be filled, if they be state or parish offices, by appointment of the Governor, with the advice and consent of the Senate, which appointment shall be for the entire unexpired term of such vacant office. If the Senate be not in session at the time the appointment is made, the vacancy shall be filled by appointment by the Governor, which appointment shall expire on the third Monday after the meeting of the next session of the General Assembly thereafter, unless the time for which the vacancy exists expires sooner; and, if the time of such vacancy has not expired, it shall

then be the duty of the Governor to fill such unexpired vacancy by appointment, by and with the advice and consent of the Senate; and if it be a municipal office, the vacancy must be filled by appointment of the Governor for the unexpired term of the person whose office is so vacated."

It is clear that, if article 61 of the Constitution of 1868 in authorizing the Governor to "fill vacancies" (not all vacancies) occurring during the recess of the Senate by commissions which were to expire at the end of the session, had been then considered to apply to vacancies in statutory, as well as constitutional, offices, the General Assembly would have had no power to shorten the lives of such commissions to the third Monday of the session, and doubtful, to say the least, whether it could have gone beyond the Constitution and required the Governor, in cases in which the time of the vacancy had not·expired, to make appointments to be confirmed by the Senate. But the General Assembly had the right to construe article 61 with article 120, which latter conferred upon it and not upon the Governor the power to prescribe the mode of filling vacancies in all offices for which provision was not made in the Constitution; and, concluding that the power conferred upon the Governor extended to offices which he was authorized to fill by original appointment, and the power conferred upon the General Assembly to offices, the mode of filling which it was authorized to prescribe, it prescribed, as the mode of filling vacancies in such offices, that of appointment by the Governor, subject to such conditions as it saw fit to impose; and the same view appears to have been taken in the enactment of Act No. 78 of 1906, which, after providing that the assessors throughout the state (the parish of Orleans excepted) shall be elected for terms of four years, declares (section 5, p. 124):

"That all vacancies occurring in the office of assessor, by death, resignation, failure to qualify, or otherwise, where the unexpired portion of

the term is one year or more, shall be filled by special election, to be called by the Governor and held within sixty days of the occurrence of such vacancy under the general election laws of the state. In all cases where the vacancy is less than one year, the Governor shall appoint for the remainder of the term."

The office of assessor, being of statutory creation, is clearly within the terms of the proviso of article 71 of the Constitution, which reserves to the General Assembly "the right to prescribe the mode of appointment or election to all offices created by it," and, as we think, of article 171, which confers upon the General Assembly the power to determine the mode of filling vacancies in all offices for the filling of which provision is not made in the Constitution, since our conclusion is that article 72 is intended to prescribe the mode of filling vacancies in statutory offices only in cases where the General Assembly has failed to exercise the power conferred upon it in that respect by article 171, and that the General Assembly is as well within its rights in declaring that an unexpired term of less than a year in a statutory office shall be filled by gubernatorial appointment without the action of the Senate as it is in declaring that an unexpired term of more than a year in such office shall be filled by election.

The case of State ex rel. George v. Tucker, 23 La. Ann. 139, does not appear to us to be altogether in point; and the case of State ex rel. Meyer v. Van Tromp, 27 La. Ann. 569, refers to no law, constitutional or statutory, and conveys but a vague idea of the facts upon which the decision rests. As it was decided in 1875, however, it could not have been affected by Act No. 78 of 1906, which, as we have seen, declares that a recess appointment to fill a vacancy of less than a year shall be made by the Governor for the whole unexpired term, and which, as applied to vacancies in statutory offices, we hold to be competent legislation.

[2] Counsel for defendant (Guss) does not,

in his brief, insist upon it that the mere appointment of his client operated a supercession of the appointment of Holstein previously made, or a removal of Holstein from the office, nor do we think that it produced these effects. Holstein was, unquestionably, the de jure and de facto assessor, under a commission which, assuming it to have been made agreeably to the provisions of Act No. 78 of 1906, entitled him to hold the office until the expiration of the term of his deceased predecessor, and as there could not have been two legal incumbents of the office at the same time, it was necessary that he should have been legally removed before the appointment of Guss could have taken effect. The commission which has issued to Guss, however, reads, "vice K. P. Holstein, deceased," from which it would appear either that the Governor was not aware that Willis C. Holstein had already succeeded K. P. Holstein, deceased, or else was of opinion that his commission had expired; and as there is nothing to indicate that he intended to remove W. C. Holstein, we are of opinion that the commission issued to Guss was inoperative for the filling of a vacancy that did not exist. State ex rel. Downes v. Towns, 21 La. Ann. 490; State ex rel. Robinson v. McNeely, 24 La. Ann. 19, 20; Wood v. Inhabitants of Bristol, 84 Me. 358, 24 Atl. 865.

The judgment appealed from is therefore affirmed.